IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (No. VI) | : | |
| | : | |
| MICHELLE TAYLOR, | : | |
| Administrator c/t/a of | : | |
| the Estate of Ronald Taylor and | : | CIVIL ACTION NO.: 12-cv-60048 |
| Marie Taylor | : | |
| (Plaintiff) | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL ELECTRIC COMPANY, | : | |
| et al. | : | |
| (Defendants) | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE                                                                                        May 8, 2013
United States Magistrate Judge

  Before the Court is "Plaintiff's Motion to Enforce Settlement Agreement" ("Pl. Mot.") (Doc. 35) and Defendant's Response ("Def. Resp.") (Doc. 37) thereto. The matter is now ripe for resolution, and pursuant to Judge Robreno's March 18, 2013, Order of Reference (Doc. 36), we submit our recommendations for its disposition.

  Plaintiff asserts that the material terms of a settlement have been agreed upon and that "Buffalo Pumps would pay and the Plaintiffs would accept a sum certain and the case would be dismissed." (Pl. Mot. at 4.) Defendant does not question whether there was an agreement about the sums to be paid but has taken the position that it is unable, or at least unwilling, to tender the agreed sum without the release of the spousal plaintiff, Marie Taylor's ("Mrs. Taylor") social security number ("SSN"). (Def. Resp. at 6.) Defendant contends that production of Mrs. Taylor's SSN is necessary in order for it to comply with the Medicare Secondary Payer Act ("MSPA"), which requires Buffalo Pumps ("Buffalo") to report the settlement to the Department

1

of Health and Human Services ("DHHS"). (Def. Resp. at 6.) Plaintiff maintains that the reporting of this information is not required under the MSPA in that Mrs. Taylor's claim is for loss of consortium only and would not implicate any past, present, or future Medicare covered claims. (Pl. Mot. at 5.) For the reasons set out within, we conclude that the providing of Mrs. Taylor's SSN is a material term, which was not agreed upon by the parties. Accordingly, we are unable to grant Plaintiff's motion.

## I. Discussion

Connecticut law provides that the court "has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are *clear* and *unambiguous*" and when the parties do not dispute the terms. *Audubon Parking Associates Ltd. P'ship v. Barclay & Stubbs, Inc.*, 626 A.2d 729, 733 (Conn. 1993); (citing *Gatz v. Southwest Bank of Omaha,* 836 F.2d 1089, 1095 (8th Cir. 1988)) (emphasis added).

It is well established that to form a valid and binding contract there must be a "mutual understanding of the terms that are definite and certain between the parties" and it must be based upon "an identical understanding by the parties." *L &R Realty v. Conn. Nat'l Bank*, 732 A.2d 181, 188 (Conn. App. 1999) (internal citations and quotations omitted). "So long as any essential matters are left open for further consideration, the contract is not complete." *Id*. The determination of whether a term is essential to a contract "turns on the particular circumstances of each case." *111 Whitney Avenue, Inc. v. Comm'r of Mental Retardation*, 802 A.2d 117, 123 (Conn. App. Ct. 2002) (internal quotation omitted). "The party seeking enforcement of the purported agreement must be able to establish that the terms of that agreement were clear and that all parties at one point in time had in fact agreed upon them." *Hackley v. Garofano*, No. 095031940S, 2010 WL 3025597, *4 (Conn. Super. Ct. July 1, 2010); *see also Suffield Dev.*

*Associates Ltd. P'ship v. Soc'y for Savings*, 708 A.2d 1361, 1366 (Conn. 1998) (where a purported agreement contained only statement of some essential features of proposed contract and not complete statement of all essential terms, plaintiff failed to prove existence of agreement).

In order to resolve the issue set out in Plaintiff's motion, we must determine whether the parties agreed upon the essential terms and whether those terms are clear and unambiguous. In doing so, we consider the narrow question raised by this motion – whether Defendant, Buffalo (or its liability insurer), is obligated to report a settlement "*with a Medicare Beneficiary* to DHHS pursuant to 42 U.S.C. 1395y(b)(8)(A)" and if so, whether we should therefore "enforce the settlement language requiring the disclosure of. . . the consortium claimant's social security number." (Def. Resp. at 6) (emphasis added.) Buffalo maintains that under Section 111, the mandatory reporting section of the Medicare, Medicaid, and SCIP Extension Act of 2007 ("MMSEA"), "primary plans must report settlements. . . where the claimant is a Medicare beneficiary and medicals are claimed and/or released *or* the settlement [] has the effect of releasing medicals." (Def. Resp. at 8) (emphasis added) (citing CMS User Guide, Version 3.4, Ch. IV, July 3, 2012, pg. 31.)[1] Plaintiff maintains that Buffalo does not have that obligation in that Medicare reporting is only required for "Medicare beneficiaries or claimants for whom

---

[1] The Centers for Medicare & Medicaid Services (CMS) is the component of the Department of Health and Human Services that oversees and administers the Medicare and Medicaid programs. *See The Maryland Dept. of Health and Mental Hygiene v. Centers for Medicare and Medicaid Services*, 542 F.3d 424, 426 (4th Cir. 2008); *Almy v. Sebelius*, 749 F.Supp.2d 315, 319 (D. Md. 2010). CMS promulgated "The MMSEA Section 111, Medicare Secondary Payer Mandatory Reporting, Liability Insurance (Including Self- Insurance), No-Fault Insurance, and Worker's Compensation User Guide" (hereinafter "CMS User Guide"). *See* http://www.cms.gov/Medicare/ Coordination-ofBenefits/MandatoryInsRep/Downloads/ NGHPUserGuideVer35Ch1IntroAndOverview.pdf. This guide was originally published on November 17, 2008, and has been revised several times. The current edition is Version 3.5 and is divided into five chapters. In Chapter I, under the heading "Introduction and Important Terms," CMS states that the User Guide "provides information and instructions for the Medicare Secondary Payer (MSP) NGHP [Non-Group Health Plan] reporting requirements mandated by Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA)." CMS User Guide, Version 3.5, Chapter 1, Apr. 22, 2013 pg. 2-1.

payment of medical bills has been made or can reasonably be expected to be made by a third party." (Pl. Mot. at 5.) Mrs. Taylor contends that her consortium claim is not and could not be for any medical related issues, and asserts that Connecticut law does not permit damages on behalf of the spouse of an injured party. *Id.* In that the parties have made it so, we deem the question of whether Mrs. Taylor has to provide her SSN to Buffalo under these circumstances to be essential.

The MMSEA was signed into law in December 2007. *See* Pub.L. No. 110-173; (codified in relevant part as 42 U.S.C. § 1395y(b)(7) and (8)). Section 111 of the Act added new mandatory reporting obligations to the MSPA, which requires group health plans, liability insurers, and self-insurers to provide detailed information regarding all liability settlements. *See Hackley*, 2010 WL 3025597 at *3. This provision states,

> (8) Required submission of information by or on behalf of liability insurance (including self-insurance), no fault insurance, and workers' compensation laws and plans
>
> > (A) Requirement
> >
> > On and after the first day of the first calendar quarter beginning after the date that is 18 months after December 29, 2007, an applicable plan shall—
> >
> > > (i) determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits *under the program under this subchapter on any basis*; and
> > >
> > > (ii) if the claimant is determined to be so entitled, submit the information described in subparagraph (B) with respect to the claimant to the Secretary in a form and manner (including frequency) specified by the Secretary. . . .

42 U.S.C. § 1395y(b)(8) (emphasis added).

"Claimant" is defined in 42 U.S.C. § 1395y(b)(8)(D)(i),(ii) as "an individual filing a claim directly against the applicable plan" or "an individual filing a claim against an individual or entity insured or covered by the applicable plan." For purposes of the statute, "applicable plan" includes liability insurance, no fault insurance, or workers' compensation laws or plans. 42 U.S.C. § 1395y(b)(8)(F)(i),(ii),(iii). 42 U.S.C. § 1395y(b)(8)(A)(i) requires an *applicable plan* to determine whether a claimant is entitled to benefits under the *program*. If a "claimant" is determined to be so eligible, the plan must proceed to 42 U.S.C. § 1395y(b)(8)(A)(ii), which provides that reporting is required. ("[I]f the claimant is determined to be so entitled, [the plan shall] submit the information described in subparagraph (B) with respect to the claimant to the Secretary in a form and manner (including frequency) specified by the Secretary. . . .").

For purposes of this statute, Buffalo's liability insurer is the "applicable plan" and Mrs. Taylor is a "claimant."[2] We therefore conclude that if the parties settle, Buffalo's liability insurer must determine if Mrs. Taylor is entitled to Medicare benefits. The current CMS User Guide discusses a mechanism for making this determination. It states:

> RREs [Responsible Reporting Entities] must be able to determine whether an injured party is a Medicare beneficiary, and gather the information required for Section 111 reporting. CMS allows RREs that are file submitters to submit a query to the COBC [Coordination of Benefits Contractor][3] to determine the Medicare status of the injured party prior to submitting claim information for Section III reporting. The query *must contain the injured party's Social Security Number* [] (or Medicare Health Insurance Claim Number (HICN))[4], name, date of birth, and gender.

---

[2] The Third Count of the "First Amended Complaint" asserts a loss of consortium claim on behalf of Marie Taylor. (Doc. 13.)

[3] The CMS website states that "[t]he Coordination of Benefits (COB) Contractor consolidates the activities that support the collection, management, and reporting of other insurance coverage for Medicare beneficiaries." *See* CMS.GOV, "Coordination of Benefits – General Information," http://www.cms.gov/Medicare/ Coordination-of-Benefits/COBGeneralInformation/index.html?redirect=/cobgeneralinformation/.

(Continued on next page)

CMS User Guide, Version 3.5, Chapter I, Apr. 22, 2013, pg. 31(emphasis added).

While it may be that there is some other way than this query system to make the determination mandated by 42 U.S.C. § 1395y(b)(8)(A)(i), neither party has suggested any alternative process. We are prepared to accept that the production of Mrs. Taylor's SSN would be necessary in order for Buffalo to utilize the COBC query system. If such an inquiry revealed that Mrs. Taylor was, in fact, eligible for Medicare benefits, a reporting of the settlement to CMS would be required.

We understand Plaintiff to accept this proposition as to claims where a medical injury is involved and she challenges it here only due to the nature of the claim, together with her assertion that Connecticut law precludes the recovery of medical damages for a consortium claim.[5] We note that CMS has anticipated this particular issue. The current version of its User Guide states,

> There are certain, very limited liability situations where a settlement, judgment, award, or other payment releases or has the effect of releasing medicals, but the type of alleged incident typically has no associated medical care and the Medicare beneficiary/ Injured Party has not alleged a situation involving medical care of a physical or mental injury. *This is frequently the situation with a claim for loss of consortium.* . . . Current instructions *require the RRE to report claim information in these circumstances*.

---

[4] CMS defines HICN as a "Health Insurance Claim Number (Medicare Number)." *See* CMS.gov, "Acronyms," http://www.cms.gov/apps/acronyms/results.asp?strKeyword=&strOrderBy=1&lstAud=&lstChars=H&Search=Submit+Advanced+Search&pg=10&intNumPerPage=10&Letter=&blnDesc=True. We observe that the production of Mrs. Taylor's HICN (if she has one) may constitute an obvious alternative to the production of her SSN. It may be, however, that this would fail to alleviate the harm Plaintiff is seeking to prevent, as it would likely result in the same outcome – a reporting of the settlement to DHHS. (*See* Pl. Mot. at 14) (arguing that if the settlement is reported to Medicare, "the Medicare 'system' will send out an alert that she has received a third party payment and is thus required to reimburse Medicare for 'conditional payments,'" which will result in an "undue and unjust burden on Mrs. Taylor. . . to rectify the inaccuracies with the Medicare Behemoth.")

[5] Surprisingly, Plaintiff has not provided us with the Connecticut law regarding damages for consortium Plaintiffs. We note, however, that Defendant has not challenged her assertion, and so we accept it to be true.

CMS User Guide, Version 3.5, Ch. IV, July 3, 2012, Apr. 22, 2013, pg. 6-15 (emphasis added). Thus, CMS instructs parties that the settlement information must be reported, even for a loss of consortium plaintiff, like Mrs. Taylor, who makes no claim for medical injuries. Moreover, CMS issued an "Alert"[6] on April 6, 2010, which stated, "[t]his ALERT is to advise that collection of HICNs, SSNs, or EINs, for purposes of compliance with the reporting requirements under Section 111 [] is appropriate." CMS, Office of Financial Management/Financial Services Group, "Collection of Collection of Medicare Health Insurance Claim Numbers (HICNs), Social Security Numbers (SSNs) and Employer Identification Numbers (EINs) (Tax Identification Numbers) – ALERT," Apr. 6, 2010.[7]

While we were unable to find any case law addressing this precise issue, two cases with similar factual circumstances provide some guidance. In *Hackley v. Garofano*, a father brought an action on behalf of his son, who was a minor. No. 095031940S, 2010 WL 3025597 (Conn. Super. Ct. July 1, 2010). The parties reached an agreement to settle the claim for a sum certain, but the settlement was never consummated because the plaintiffs – father and son – refused to disclose their SSNs to the defendants. The defendants argued that it was required to "determine whether a claimant. . . [was] entitled to Medicare on any basis" before distributing any settlement funds. *Id*. at *1. The plaintiff argued that the injured son was sixteen years old and so a

---

[6] CMS User Guide Version 3.5, Chapter I, states that:

> [a]t certain times, certain information may be released in the form of an Alert Document. Any Alert dated subsequent to the date of the currently published User Guide supersedes the applicable language in the User Guide. All updated Section 111 policy guidance published in the form of an Alert will be incorporated into the next version of the User Guide. Until such time, RREs must refer to the current User Guide and any subsequently dated alerts for complete information on Section 111 reporting requirements.

CMS User Guide, Version 3.5, Chapter I, Apr. 22, 2013, pg. 2-1.

[7] *See* http://www.cms.gov/Medicare/Coordination-of-Benefits/MandatoryInsRep/Downloads/RevisedCollectionSSNEINs.pdf.

7

determination as to his eligibility for Medicare could be made based upon his age alone. *Id*. It further maintained that the father of the injured minor was not injured and was only a party to the case because the son was a minor. *Id*.

The court concluded that it was "permissible for the defendant to condition its disbursement of settlement funds on the plaintiff's provision of their social security number." *Id*. It rejected plaintiff's contention that the age of the son rendered him ineligible for Medicare benefits, and so should preclude defendants from gaining access to his SSN, as it determined that the purpose of the reporting provision of the MMSA was to avoid "having insurers 'at the mercy of' plaintiffs when the time comes to ascertain Medicare eligibility." *Id*. at *4 (quoting *Seger v. Tank Connection, LLC*, No. 8:09CV75, 2010 WL 1665253 (D. Neb. Apr. 22, 2010)). It further noted that "the statute expresses a preference for a standardized procedure based on social security numbers or Medicare Health Insurance Claim Numbers with which the insurer can make the determination itself electronically." *Id*. The court, however, concluded that it was clear that "the plaintiffs never unambiguously agreed to a settlement that required them to provide their social security numbers." *Id*. at *5.

This issue was likewise considered, albeit in a slightly different context, in a case in the Eastern District of New York. *See Bey v. City of New York*, No. 2011-5833, 2013 WL 439090 (E.D.N.Y. Feb. 5, 2011)[8]. In this case, the parties reached a settlement, but upon the request of the defendant, the plaintiff refused to provide his SSN. *Id*. at *1. The defendant filed a motion to compel the production of this information, which the court granted. *Id*. The court discussed

---

[8] The court noted that its Order "addresse[d] the letter of counsel for defendants. . . informing the Court that plaintiff had provided satisfactory settlement documents and withdrawing defendants' pending motion to enforce a settlement and compel plaintiff to disclose his social security number." *Bey*, 2013 WL 439090 at *1. The defendant had requested the court to order that the time in which it must pay be calculated from the date of plaintiff's production of his SSN. *Id*. While the posture of *Bey* is somewhat different than the case before us, that court provided background information which included a discussion of the propriety of requiring a plaintiff to provide his or her SSN, which is pertinent to our analysis.

8

this issue, stating that "defendants are obligated by Medicare reporting laws to collect plaintiff's SSN and submit it to the query system established by the Centers for Medicare & Medicaid Services ("CMS")." *Id.* It further noted that this query is "necessary for the defendant to comply with its statutory duty to report the identity of a claimant who is entitled to Medicare benefits." *Id.* (quoting *Torres v. Hirsch Park, LLC*, 91 A.D.3d 942, 943) (N.Y.S.2d 2012)). Accordingly, the court granted defendant's motion to compel the production of plaintiff's SSN.

Other courts have considered whether defendants can obtain plaintiffs' SSNs through discovery for the purpose of compliance with the MSPA. *See Seger v. Tank Connection, LLC*, No. 8:09CV75, 2010 WL 1665253 (D. Neb. Apr. 22, 2010); *Smith v. Sound Breeze of Groton Condominium Ass'n, Inc.*, No. KNLCV 095012261S, 2011 WL 803067 (Conn. Super. Ct. Feb. 3, 2011). In *Seger*, after discussing the rationale for the reporting provision of the MSPA, the court determined that the plaintiff was required to provide his SSN in response to defendant's interrogatories. *Seger*, 2010 WL 1665253 at *6. The court in *Smith* likewise ordered the plaintiff to furnish her SSN noting that the information was relevant and that the "case [could] not be settled without the requested information." *Smith*, 2011 WL 803067 at *3 (citing *Hackley*, 2010 WL 3025597) (plaintiff argued that she had not received Medicare benefits, and so provision of her SSN was irrelevant).

We agree with the determination made in *Hackley*, that it is permissible for a defendant to condition settlement on the production of a plaintiff's SSN. *See* 2010 WL 3025597 at *4. While we appreciate Plaintiff's argument that Connecticut law does not allow for payment of medical benefits by a defendant in a loss of consortium claim, we do not agree that the Defendants are accordingly exempt from the reporting obligations under the MSPA. The language contained in 42 U.S.C. § 1395y(b)(8)(A)(i) and (ii) discussing the reporting obligations demonstrates that the

relevant consideration is not whether the plaintiff is entitled to any payment by a defendant for medical benefits, but rather whether the plaintiff is eligible for any benefits *under the Act*. *See* 42 U.S.C. § 1395y(b)(8)(A)(i) (emphasis added). We therefore acknowledge that it is reasonable for Defendant to predicate settlement on the production of Mrs. Taylor's SSN, as such information is necessary for utilization of the COBC query system to determine whether an individual is entitled to Medicare benefits.

## II. Conclusion

While we acknowledge that it is permissible for Defendant to predicate settlement on the production of Mrs. Taylor's SSN, we conclude that the provision of this information constitutes a material term of the settlement agreement that was never agreed upon by the parties. We therefore make the following recommendation.

## **RECOMMENDATION**

AND NOW, this 8th day of May, 2013, upon consideration of "Plaintiff's Motion to Enforce Settlement Agreement" (Doc. 35), Defendant's Response (Doc. 37) thereto, and for the reasons described in the foregoing report, it is hereby respectfully **RECOMMENDED** that Plaintiff's motion be **DENIED.**

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE